**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a corporation established pursuant to 12 U.S.C. § 1716 *et seq*, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. |
| v. | ) ) | Hon. |
| KINGSBROOK MHC - MICHIGAN, LLC, a Michigan limited liability company, | ) ) ) | |
| Defendant. | ) ) ) | |

**VERIFIED COMPLAINT FOR ENFORCEMENT OF MORTGAGE, INCLUDING ASSIGNMENT OF RENTS, APPOINTMENT OF RECEIVER AND OTHER RELIEF**

NOW COMES Federal National Mortgage Association ("Fannie Mae" or "Plaintiff"), a corporation established pursuant to 12 U.S.C. § 1716 *et seq*., by its attorneys for its verified complaint (*see* Declaration of Trent DiNardo attached as Exhibit A), and alleges:

**PARTIES**

1. Fannie Mae is the current owner and holder of the Loan and the Loan Documents (as such term is defined herein).

4898-5069-7650.2

2.      Congress chartered Fannie Mae to facilitate the nationwide secondary residential mortgage market. See 12 U.S.C. § 1716. The Housing and Economic Recovery Act of 2008 (HERA), Pub. L. No. 110- 289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 et seq.), established the Federal Housing Finance Agency (FHFA or Conservator) as Fannie Mae's primary regulator.

3.      On September 6, 2008, pursuant to HERA, the Director of FHFA placed Fannie Mae into conservatorship, where it remains to this day. See 12 U.S.C. § 4617(a). As Conservator, FHFA succeeded to all of Fannie Mae's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). FHFA, as the Conservator is statutorily empowered to "preserve and conserve Fannie Mae's assets and property," to "operate" Fannie Mae, to "perform all of Fannie Mae's functions in Fannie Mae's name," and to "collect all obligations and money due" Fannie Mae. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions ... as a conservator." 12 U.S.C. § 4617(f). Because the Receiver derives its authority from the Court, Section 4617(f) also precludes the Receiver from restraining or affecting the Conservator's exercise of its statutory powers and functions.

4.      FHFA has represented to Fannie Mae that FHFA supports the appointment of a receiver on the terms set forth in the proposed Order accompanying Fannie Mae's Motion. However, FHFA reserved its rights as to any other or different

terms for the appointment of a receiver that have not been approved explicitly by FHFA in advance.

5.      HERA provides that "[n]o property of [Conservator] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [Conservator], nor shall any involuntary lien attach to the property of [Conservator]." See 12 U.S.C. § 4617(j)(3). Therefore, federal law prohibits any action by a third-party that affects Fannie Mae's interest in the loan agreement, note or deed of trust, owned by the Fannie Mae or under which Fannie Mae is beneficiary.

6.      Defendant Kingsbrook MHC – Michigan, LLC ("Borrower") is a Michigan limited liability company and is the mortgagor of the property commonly known as 4600 N. Van Dyke Rd, Almont, Michigan 48003. Borrower's sole member is Founding Partners, LLC.

7.      Founding Partners, LLC is a Michigan limited liability company. The members of Founding Partners, LLC are (i) Bergy Darakjian Restated Living Trust, u/a/d September 25, 1975; (ii) Armen R. Darakjian Living Trust, u/a/d May 17, 2009; (iii) Bergy Darakjian Children's Trust f/b/o Ara Darakjian, u/a/d July 21, 2009; (iv) Bergy Darakjian Children's Trust f/b/o Armen Darakjian, u/a/d July 21, 2009; and (v) Ara J. Darakjian Living Trust.

8.      The trustee of the Bergy Darakjian Restated Living Trust, u/a/d September 25, 1975 is Bergy Darakjian.  The trustee of the Armen R. Darakjian

3

Living Trust, u/a/d May 17, 2009 is Armen R. Darakjian. The trustee of the Bergy Darakjian Children's Trust f/b/o Ara Darakjian, u/a/d July 21, 2009 is Ara J. Darakjian. The trustee of the Bergy Darakjian Children's Trust f/b/o Armen Darakjian, u/a/d July 21, 2009 is Armen R. Darakjian. The trustee of the Ara J. Darakjian Living Trust is Ara J. Darakjian. Ara J. Darakjian, Armen Darakjian, and Bergy Darakjian are each an individual, who, upon information and belief, are citizens of Michigan or a state other than the District of Columbia.

9. Non-party ORIX Real Estate Capital, LLC d/b/a Lument Capital is the special servicer of the Loan (as defined below) to Borrower.

**JURISDICTION AND VENUE**

10. The Court has jurisdiction over this matter under 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because, as demonstrated above, the parties are citizens of different states. Additionally, Plaintiff seeks equitable relief in the form of a receiver and for injunctive relief.

11. Venue is proper in this Court under 28 U.S.C. § 1391 because the subject matter of this Complaint is situated in this District. Plaintiff requests the appointment of a receiver to operate the commercial property located at 4600 N Van Dyke Road, Almont, Michigan 48003, as more particularly described in Exhibit B,

4

on which Plaintiff holds a mortgage and including the Personal Property (as defined below) located thereon (the "Property").

## GENERAL ALLEGATIONS

### The Loan

12.     On or about June 30, 2022, ORIX Real Estate Capital, LLC d/b/a Lument Capital ("Lument" or "Original Lender") made a loan to Borrower in the amount of $7,871,000 (the "Loan").

13.     The Loan is evidenced by a note and is secured by a mortgage on the Property.

14.     Borrower has defaulted on its obligations under the note, mortgage and other loan documents evidencing and/or securing the Loan.

15.     This is an action to, among other things, enforce the covenants in the parties' contracts and to appoint a receiver with respect to the Property.

16.     Borrower consented in the mortgage to the *ex parte* appointment of a receiver by the Court in the event of default.  The Mortgage (as defined below) states in relevant part as follows:

> Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and ***without the necessity of giving prior notice*** (oral or written) to Borrower, Lender may apply to any court having jurisdiction ***for the appointment of a receiver*** for the Mortgaged Property to take any or all

5

of the actions set forth in Section 3. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at anytime after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument ***expressly consents to the appointment of such receiver***, including the appointment of a receiver *ex parte*, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver.

Ex. D, § 3(e) (emphasis added).

### The Mortgage

17.     Borrower's indebtedness under the Loan is evidenced by that certain Multifamily Note dated June 30, 2022 (the "Note").   The Loan and Note are governed by that certain Multifamily Loan and Security Agreement (Non-Recourse) dated June 30, 2022 (the "Loan Agreement").   A copy of the Note and Loan Agreement are attached as group Exhibit C.

18.     To secure repayment of the indebtedness evidenced in the Note and performance of all covenants and conditions contained therein, Borrower also executed a Multifamily Mortgage dated June 30, 2022 (the "Mortgage") in the amount of $7,871,000 in favor of Original Lender, which was duly recorded in the Lapeer County Register of Deeds (the "Recorder") on July 8, 2022 in Liber 3303, Page 945.  A copy of the Mortgage is attached as Exhibit D.

19.     Borrower also assigned to Original Lender all of Borrower's right, title, and interest in and to all rents, issues, and profits that may arise or be had from the

Property, and other property rights, interests, and estates as more particularly set out in the Mortgage.

20.     The Mortgage further states:

> As part of the consideration for the Indebtedness, Borrower absolutely and unconditionally assigns and transfers to Lender all Leases and Rents. It is the intention of Borrower to establish present absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower.

Ex. D, § 3(a).

21.     The Mortgage also grants a security interest in the Borrower's Personalty (as defined in the Mortgage), which includes:

> all of Borrower's present and hereafter acquired right, title and interest in all Goods, accounts, choses of action, chattel paper, documents, general intangibles (including Software), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Land or the Improvements now or in the future, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, and all other intangible property and rights relating to the operation of, or used in connection with the Land or the Improvements, including all governmental permits relating to any activities on the Land.

Ex. D, § 1.

22.     Such security interest has been perfected by the Financing Statement naming Borrower as debtor and Fannie Mae c/o Original Lender as secured party, as recorded with the Recorder on July 8, 2022, Liber 3303, Page 974 (the "County Financing Statement"), and a Financing Statement naming Borrower as debtor and Fannie Mae c/o Original Lender as secured party, with the Michigan Secretary of State on July 1, 2022 as File Number 20220701000694-1 (the "State Financing Statement"). A copy of the County Financing Statement and State Financing Statement are attached hereto as Exhibit E.

23.     Original Lender assigned its interest in the Note and Loan Documents to Fannie Mae. Original Lender endorsed the Note to Fannie Mae ("Allonge"). Original Lender transferred its right, title, and interest in and to the Loan and all documents and instruments executed and/or delivered in connection therewith or related thereto to Fannie Mae pursuant to that certain Assignment of Collateral Documents and Other Loan Documents dated as of May 6, 2022 ("Omnibus Assignment to Fannie Mae").

24.     The Mortgage was assigned to Fannie Mae pursuant to that certain Assignment of Security Instrument dated as of June 30, 2022 and recorded on July 8, 2022 in Liber 3303, Page 971 with the Recorder (the "Mortgage Assignment to Fannie Mae", collectively with Allonge, Omnibus Assignment to Fannie Mae, the

8

"Assignments to Fannie Mae"). A copy of the Assignments to Fannie Mae are attached hereto as Exhibit F.

25. Hereinafter, the Mortgage, Note, Loan Agreement, County Financing Statement, State Financing Statement, and Assignments to Fannie Mae are referred to collectively, where appropriate, as the "Loan Documents."

### Borrower's Default Under the Loan Documents

26. The Property consists of a 233- site manufactured home community. In order to preserve and maintain the value, marketability, rentability, and habitability of the Property, maintain the Property in good, safe and working condition, and ensure the safety and wellness of its tenants, Fannie Mae requests that a receiver be appointed immediately.

27. Borrower has defaulted under the Loan Documents by, among other defaults, failing to pay the required Monthly Debt Services Payment on June 1, 2025 and for all subsequent months (Ex. C, § 14.01(a)(1)).

28. Borrower has also allowed mechanics' liens to be recorded against the Property in favor of: (i) Buck's Concrete Contracting in the amount of $43,582.00; (ii) Protocon RM in the amount of $12,528.82; (iii) Jerry's Manufactured Home Removal, LLC d/b/a JMHR Group Dock and Door and JMHR Group in the amount of $574,573.50; and (iv) AR Landscape & Stonework Inc. in the amount of $245,423.00 ("Mechanics' Liens") and has failed to cause the Mechanics' Liens to

be released or bonded off.  Borrower also granted a lien against certain personal property in favor of Deere & Company and allowed it to be filed with the Michigan Secretary of State ("UCC Lien"). The recording of the Mechanics' Liens and UCC Lien, and Borrower's failure to bond off or release the same within 60 days, constitutes an unauthorized Transfer, which is an automatic Event of Default under the Loan Documents (Ex. C, §§ 11.02(a)(2), (b)(1), 14.01(a)(6)).

29.     On August 26, 2025, counsel for Fannie Mae sent a Notice of Default, Acceleration and Demand ("Notice of Default") to Borrower informing Borrower, *inter alia*, of the various Events of Default and accelerating the entire Loan amount. A copy of the Notice of Default is attached as Exhibit G.

30.     Borrower also has failed to maintain adequate insurance on the Property, which constitutes an automatic Event of Default under the Loan Documents (Loan Agreement § 14.01(a)(2)). As a result, on April 10, 2026, Lender exercised its right to force place insurance, retroactive to July 23, 2025 (Loan Agreement § 9.03(a)).

31.     On March 25, 2026, counsel for Fannie Mae sent a Notice of Intent to Force Place Insurance ("FPI Notice") to Borrower informing Borrower, *inter alia*, of its failure to maintain adequate insurance on the Property and that Lender, pursuant to Section 9.03(a) of the Loan Agreement, would force-place insurance at Borrower's cost unless Borrower provided documentation showing compliant

10

coverage within five (5) business days. A copy of the FPI Notice is attached as Exhibit H.

32.     The unpaid principal balance as of March 13, 2026 is approximately $7,871,000.00 and note rate interest has accrued on said unpaid principal in the amount of $365,949.03 through March 13, 2026 and default rate interest has accrued on said unpaid principal in the amount of $175,567.98 through March 13, 2026. The total amount due as principal and interest, along with reserves, late fees, and other charges, as of March 13, 2026 is $9,003,027.86, subject to any setoffs for reserve funds. In addition, Borrower is liable for attorneys' fees and costs.

33.     Pursuant to the Mortgage, Borrower's license to collect rents terminated upon an Event of Default.  The Mortgage states in relevant part:

> If an Event of Default has occurred and is continuing, without the necessity of Lender entering upon and taking and maintaining control of the Mortgaged Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction, ***the revocable license granted to Borrower pursuant to Section 3(b) shall automatically terminate***, and Lender shall immediately have all rights, powers and authority granted to Borrower under any Lease (including the right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease) and, without notice, Lender shall be entitled to all Rents as they become due and payable, including Rents then due and unpaid.

Ex. D, § 3(c) (emphasis added).

11

34.    Borrower expressly consented in the Mortgage to the appointment of a receiver upon an Event of Default, which is defined in the Loan Agreement to include any failure by Borrower to pay or deposit when due any amount required by the Note, the Loan Agreement or any other Loan Document" (Ex. C, § 14.01(a)(1)) and "the occurrence of any Transfer not permitted by the Loan Documents …" (Ex. C, § 14.01(a)(6)).

35.    In particular, Section 3(e) of the Mortgage states, in relevant part, that Borrower irrevocably consented to the appointment of a receiver in the circumstances present here:

> Notwithstanding any other right provided Lender under this Security Instrument or any other Loan Document, if an Event of Default has occurred and is continuing, and regardless of the adequacy of Lender's security or Borrower's solvency, and ***without the necessity of giving prior notice*** (oral or written) to Borrower, Lender may apply to any court having jurisdiction ***for the appointment of a receiver*** for the Mortgaged Property to take any or all of the actions set forth in Section 3. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at anytime after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument ***expressly consents to the appointment of such receiver***, including the appointment of a receiver *ex parte*, if permitted by applicable law. Borrower consents to shortened time consideration of a motion to appoint a receiver.

Ex. D, § 3(e) (emphasis added).

36.     Borrower has: (i) failed to make the required Monthly Debt Services Payments on June 1, 2025 and for all subsequent months and (ii) allowed an unauthorized Transfer of the Property, among other defaults.

### Plaintiff's Damages

37.     Because Borrower has failed and refused to fulfill its obligations under the Loan Documents, Plaintiff is concerned that Borrower will fail to maintain the Property securing its obligations to Plaintiff.

38.     The Property consists of a 233-site manufactured home community, and, given Borrower's default under the Loan Documents, Plaintiff is justifiably concerned that the Property is not being adequately managed and maintained, which may harm the tenants of the Property.

39.     Plaintiff is entitled to the appointment of a receiver to, among other things, safeguard and preserve its rents and profits derived from the Property, and use such to preserve and maintain its collateral consistent with the Loan Documents.

40.     If a receiver is not appointed, Plaintiff's right to recover income from the Property and to presently enforce the Mortgage covenants will be forever lost. It is inequitable to allow Borrower to collect and divert revenues from the Property that it is contractually obligated to pay to Plaintiff when it has failed to fulfill its obligations under the Loan Documents.

41.     Upon information and belief, the tenant rents for the Property are due monthly.

42.     Plaintiff will suffer immediate and irreparable loss unless a receiver is appointed because it cannot otherwise preserve and protect its collateral and enforce the covenants in the Mortgage.

## COUNT I – BREACH OF CONTRACT, ENFORCEMENT OF MORTGAGE (INCLUDING ASSIGNMENT OF RENTS, AND APPOINTMENT OF RECEIVER)

43.     Plaintiff incorporates the preceding allegations as though fully set forth herein.

44.     The Mortgage provides at Section 3 that in the Event of Default, Plaintiff can apply to a court for the appointment of a receiver of the Property to collect rents and profits and preserve the value of the Property.

45.     As demonstrated above, Borrower granted Plaintiff the <u>strict right</u> to the appointment of a receiver in the event it defaulted on its obligations under the Loan Documents.

46.     Borrower is in default of and has breached one or more of the covenants in the Loan Documents.

47.     Prior to filing this Complaint, and by its action in this case, Plaintiff has demanded that Borrower agree to the appointment of a receiver for the Property.

48.    Borrower consented to the appointment of a receiver in the Loan Documents, but has not specifically consented to entry of the proposed order submitted herewith.

49.    As further grounds for the appointment of a receiver, Plaintiff is also entitled to appointment of a receiver under Michigan's Uniform Assignment of Rents Act, M.C.L. § 554.1051 *et seq*. ("MUARA"), and particularly, M.C.L. § 554.1057, which provides that Plaintiff "is entitled to the appointment of a receiver" when a borrower is in default and has agreed in a signed document to the appointment of a receiver upon borrower's default, among other bases for appointment.    Plaintiff is also entitled to the appointment of a receiver under Michigan's Uniform Commercial Real Estate Receivership Act, M.C.L. § 554.1011 *et seq*., and particularly, M.C.L. § 554.1016.

50.    Furthermore, unless a receiver is appointed immediately by this Court to take possession and control of the Property (which is collateral for a loan with an unpaid principal balance of $7,871,000), Plaintiff will have no effective and/or efficient means to enforce the covenants and the assignment of rents and leases provisions of the Mortgage and/or to insure that taxes, insurance, utilities and other expenses for the Property are properly paid.

51. Plaintiff will suffer immediate and irreparable loss unless a receiver is appointed because it cannot otherwise preserve and protect its collateral and enforce the covenants in the Mortgage.

52. Plaintiff seeks relief as set forth herein.

## COUNT II – INJUNCTIVE RELIEF

53. Plaintiff incorporates the preceding allegations as though fully set forth herein.

54. Upon information and belief, Borrower and/or its agent are in complete control of the Property.

55. Borrower's failure to fulfill its obligations to Plaintiff is a breach of the terms of the Loan Documents.

56. The entry of a preliminary injunction is necessary to protect and preserve Plaintiff's interest in the Property (as well as the revenues, profits and income from the Property), and the personal property on which it has a lien, and to permit it to enforce its rights under the Loan Documents. Furthermore, entry of a preliminary injunction is necessary in order to avoid irreparable harm and waste to the Property.

57. Plaintiff is likely to succeed on the merits of its claims against Borrower.

58.     Plaintiff will suffer irreparable injury in the absence of a temporary restraining order and preliminary injunction that enjoins Borrower from transferring, disposing of, or concealing any part of the collateral, and turns over control of the Property to a receiver who will take the necessary steps to maintain it and its operations.

59.     The balance of hardships and the public interest favor issuing a temporary restraining order and preliminary injunction in this case.

60.     Plaintiff seeks relief as set forth below.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a.     A Judgment in favor of Plaintiff and against Borrower on Counts I and II;

b.     Entry of a preliminary injunction against Borrower and its agents, employees and members (as well as any other persons with knowledge of this Court's order) barring them from transferring, expending, distributing, concealing, destroying, damaging or otherwise diminishing the Property or any part thereof or any personal property on which Plaintiff has a lien, or any proceeds of the same, including rents, profits and revenues, until a receiver is appointed;

c.     An order appointing Mark S. Kassab of M. Shapiro Real Estate Group as the receiver of the Property during the pendency of this action to take charge of the Property, to operate, manage, and conserve the Property, to collect rents, issues, and profits, to find tenants and lease the premises, to insure the Property against loss by fire or otherwise, to make necessary repairs to the Property, to pay the taxes that have been, or may be, levied against the Property, to market the property for sale, and to have and perform

all the other usual powers and duties of a receiver in similar cases;

d.    An order requiring all persons who have possession or control of the Property (other than lawful tenants) to yield and deliver possession of same to the receiver appointed by this Court.

Dated:  June 4, 2026

Respectfully submitted,

*/s/ Ann Marie Uetz*
Ann Marie Uetz (P48922)
Tamar N. Dolcourt (P73425)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
(313) 234-7100
auetz@foley.com
tdolcourt@foley.com

-and-

Jill Nicholson
Shannon Shin
DENTONS US LLP
233 S. Wacker Dr., #5900
Chicago, IL 60606
(312) 876-8000
jill.nicholson@dentons.com
shannon.shin@dentons.com

*Attorneys for Plaintiff*

18